UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:07-CR-0285-B-1 |
| | § | |
| FREDDY LEE FOOTS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Freddy Lee Foots's motion for compassionate release (Doc. 177). For the reasons that follow, Foots's motion is **DENIED WITHOUT PREJUDICE**.

## I.

## BACKGROUND

On June 12, 2008, a jury found Foots guilty of one count of interference with commerce by threats of violence in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and one count of using/carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Doc. 78, Jury Verdict. On October 30, 2008, the Court sentenced Foots to 350 months of imprisonment and five years of supervised release. Doc. 94, J., 1–3. Foots is currently sixty-five years old and is confined at Big Spring Federal Correctional Institute (FCI) with a statutory release date of January 3, 2033.[1] As of July 19, 2021, Big Spring FCI has no active cases and 692 recovered

---

[1] The Court derives this information from the Bureau of Prisons (BOP)'s Inmate Locator, available at https://www.bop.gov/inmateloc/ (last accessed July 19, 2021).

- 1 -

cases of COVID-19 among its inmates.[2]

Foots filed a motion for compassionate release (Doc. 177) on May 29, 2020. By Order dated June 12, 2020, the Court denied Foots's motion without prejudice, finding "Foots ha[d] not exhausted his administrative remedies" and "[a]lternatively, [his] release is not warranted by extraordinary and compelling reasons." Doc. 178, Mem. Op. & Order, 2. On appeal, the Fifth Circuit vacated the Court's order and remanded the case for further consideration. *See* Doc. 188, 5th Cir. J., 1; Doc. 187, 5th Cir. Op., 2. In doing so, the Fifth Circuit stated that the Court "denied Foots's motion without the benefit of intervening Fifth Circuit authority." Doc. 187, 5th Cir. Op., 1–2. Thus, remand was appropriate "for further consideration in light of *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021)." *Id.* at 2. *Shkambi*, which the Fifth Circuit issued after the Court's order denying Foots's motion, provides additional guidance to district courts in deciding compassionate release motions brought by inmates under 18 U.S.C. § 3582(c). *See* 993 F.3d at 392–93. Thus, the Court reviews Foots's motion in light of *Shkambi* below.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United*

---

[2] The Court derives this information from the BOP's COVID-19 webpage, available at https://www.bop.gov/coronavirus/ (last accessed July 19, 2021).

<—
<—
<—
<—
<—

<—

<—

<—

<—

<—
<—

<—

<—

<—

<—

<—

<—

<—

<—

<—

<—

<—

<—

<—

<—

*States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (footnote omitted) (quoting § 3582(c)(1)(A)(i)).

## III.

## ANALYSIS

As explained below, Foots's request for compassionate release fails because he has not demonstrated extraordinary and compelling reasons for a sentence reduction and because the § 3553(a) factors weigh against his release.

*A.  Foots Exhausted His Administrative Remedies.*

Section 3582(c)(1)(A) allows a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." § 3582(c)(1)(A).[3]

Although the Court previously found that Foots failed to exhaust his administrative remedies before filing his motion for compassionate release, Doc. 178, Mem. Op. & Order, 4–5, the Fifth Circuit states that "[o]n appeal, the government acknowledge[d] that Foots did in fact exhaust administrative remedies." Doc. 187, 5th Cir. Op., 2 n.1. In light of the Fifth Circuit's acceptance of the government's acknowledgment, this Court finds that Foots has satisfied the exhaustion requirement. Thus, the Court turns to the merits of his compassionate-release motion.

---

[3] The Court has clarified its interpretation of the thirty-day prong of the exhaustion requirement. *See United States v. Ezukanma*, 2020 WL 4569067, at *2–5 (N.D. Tex. Aug. 7, 2020). In sum, based on the plain text of § 3582(c)(1)(A), the Court concludes that to comply with the statute's exhaustion requirement, a defendant may show that thirty days have passed since the warden's receipt of his compassionate-release request—irrespective of a denial. *See id.* at *5.

B.     *Foots Has Not Shown Extraordinary and Compelling Reasons for Compassionate Release.*

Regardless of whether Foots exhausted his administrative remedies, he has not shown "extraordinary and compelling reasons" warranting compassionate release. *See* § 3582(c)(1)(A). Section 3582 (c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. *See generally id.* Rather, Congress "delegated that authority to the Sentencing Commission" and directed it to "promulgate general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Shkambi*, 993 F.3d at 391 (citations, quotation marks, and alterations omitted).

Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement—U.S.S.G. § 1B1.13—that "sets forth three circumstances that are considered 'extraordinary and compelling reasons.'" *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A) & cmt. n.1). These include the defendant's medical condition, age, and family situation. *See* § 1B1.13(1)(A) & cmt. n.1.[4] However, § 1B1.13 only applies to motions filed by "the Director of the [BOP]" and thus does not "bind[] a district court addressing a prisoner's own motion under § 3582." *Shkambi*, 993 F.3d at 393 (citing § 1B1.13).

While not binding, § 1B1.13 and its commentary nonetheless inform the Court's analysis of a prisoner's motion as to what constitutes an extraordinary and compelling reason for compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive,

---

[4] The policy statement also provides a catch-all provision for the existence of "an extraordinary and compelling reason other than, or in combination with," the three circumstances set forth above, "[a]s determined by the Director of the [BOP.]" § 1B1.13(1)(A) cmt. n.1.

the commentary to . . . § 1B1.13 informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curium) (noting that U.S.S.G. § 1B1.13 is "not dispositive" but "guid[ing]"); *United States v. Contreras*, 2021 WL 1536504, at *4 (E.D. Tex. Apr. 19, 2021) (finding § 1B1.13 informative in evaluating a prisoner's motion in light of *Shkambi*'s holding). In its discretion, the Court concludes that Foots has not demonstrated "extraordinary and compelling reasons" warranting compassionate release. *See* § 3582(c)(1)(A).

In his motion, Foots asserts that compassionate release is warranted because he "has been diagnosed with kidney disease[,] hepatitis C, hypertension, and other chronic health problems." Doc. 177, Def.'s Mot., 1. Foots argues that these conditions "compromise[] his immune[] system, which take[n] with [Foots]'s age (65), puts him at significant risk for severe and life threat[en]ing illness should he be expose[d] to C[OVID]-19, while incarcerated." *Id.* at 1–2. Foots also asserts that he "cannot provide self[-]care within" his facility "in light of the ongoing and growing C[OVID]-19 pandemic because he is unable to practice effective social distancing and hygien[e] to minimize [his] risk and exposure." *Id.* at 2. And "if he did develop[] complications," Foots argues, "there is no team of doctors . . . that could help him and he would 'simply die.'" *Id.* In light of what Foots deems "horrible circumstances," he claims "[i]t is no stretch to call this environment extraordinary and compelling." *Id.*

As a preliminary matter, it appears that Foots was transferred from Seagoville FCI to Big Spring FCI between the filing of his motion and the Fifth Circuit's order remanding the case. Thus, his concerns regarding the conditions and amenities at Seagoville FCI are moot. Nonetheless, the Court proceeds under an assumption that Foots maintains those same concerns about Big Spring

FCI, and addresses them here.

The Court notes that to the extent Foots raises concerns about the conditions at Big Spring FCI and inmates' inability "to practice effective social distancing and hygien[e]," in the midst of the COVID-19 pandemic, those concerns do not give rise to extraordinary and compelling reasons for his release. *See id.* The Court recognizes the unprecedented nature of COVID-19 and the outbreak of the virus at various federal prisons. But Big Spring's FCI's statistics—692 recovered cases and no active cases of COVID-19—suggest the decline of an outbreak, if anything. Further, generalized concerns about the spread of COVID-19 at Foots's facility do not give rise to extraordinary and compelling reasons for release. Rather, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements" about, for example, the propriety of incarceration for all inmates at a given facility. *See United States v. Delgado*, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020).

Regarding Foots's individual circumstances, the Court finds that he has failed to demonstrate extraordinary and compelling circumstances warranting compassionate release. As discussed, the Court exercises its discretion to determine whether a prisoner's motion demonstrates extraordinary and compelling reasons for release, but is "guided in [its] analysis by the commentary" to § 1B1.13. *Rivas*, 833 F. App'x at 558. And indeed, the commentary describes situations where compassionate release may be appropriate. For example, medical conditions of the defendant may warrant release where "[t]he defendant is suffering from a terminal illness" or "suffering from a serious . . . condition, . . . impairment, or . . . deteriorating physical or mental health because of the aging process." § 1B1.13(1)(A) cmt. n.1(A).

While not binding, this commentary is useful in determining when circumstances rise to the

level of extraordinary and compelling. The Court does not require the exact scenarios described in the commentary to § 1B1.13. However, the Court does require "extraordinary and compelling" circumstances to involve a similar degree of necessity and urgency. And Foots has not shown that his conditions involve necessity and urgency such that compassionate release is warranted.

Although Foots provides medical records substantiating many of his claimed medical conditions, *see* Doc. 177, Def.'s Mot., 8–19, he provides no argument or evidence regarding the manageability of these conditions. *See generally id.* While the Court does not discount the severity of Foots's conditions, the Court will not grant Foots compassionate release based solely on his diagnoses. As explained, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements[.]" *Delgado*, 2020 WL 2542624, at *3. Thus, this Court generally requires evidence beyond mere diagnoses, demonstrating that a medical condition warrants that particular inmate's release. *See, e.g.*, *id.* (organ transplants); *United States v. Long*, 2021 WL 949757, at *2 (N.D. Tex. Mar. 12, 2021) ("chronic obstructive lung disease, asthma, obstructive sleep apnea, benign hypertension, allergic rhinitis, obesity, arthropathy, and hepatitis C"); *United States v. Isidaehomen*, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021) ("type II diabetes mellitus, hypertension, shortness of breath, thyroid disorder, anemia, unspecified hemorrhoids, pain in unspecified joint, acute sinusitis, allergic rhinitis, hypermetropia, unspecified glaucoma, unspecified polyneuropathy, and anxiety" (alterations incorporated)). To base compassionate release on an inmate's diagnoses, alone, would amount to a disfavored "blanket pronouncement[.]" *See Delgado*, 2020 WL 2542624, at *3. Accordingly, Foots's "kidney disease[,] hepatitis C, hypertension, and other chronic health problems" do not warrant compassionate release by themselves. Doc. 177, Def.'s Mot., 1.

Instead, the Court looks to whether there are extraordinary and compelling circumstances specific to Foots. This inquiry involves considering not only Foots's diagnoses, but also the severity of his medical conditions and his ability to manage his health while incarcerated. *See Isidaehomen*, 2021 WL 243458, at *3. Foots provides little information regarding his specific circumstances beyond his diagnoses, and the Court does not independently find that his conditions are unmanageable or that they involve a degree of necessity and urgency such that compassionate release is warranted.

Finally, though Foots claims his facility cannot provide sufficient care because "there is no team of doctors," Doc. 177, Def.'s Mot., 2, his medical records indicate that he frequently receives medical attention. *See id.* at 8–19. Thus, the Court does not give much weight to Foots's assertion that "he would 'simply die'" if he contracted COVID-19. *Id.* at 2. Indeed, Foots's medical records show that he can consult medical professionals and has access to adequate care and medications when needed. *See generally id.* at 8–19. And there is no indication that Foots would receive better care for his conditions if released from Big Spring FCI. The Court therefore rejects Foots's allegations of inadequate medical care as a basis for compassionate release.

Overall, nothing before the Court indicates that Foots's personal circumstances warrant compassionate release. As discussed, "Congress never defined or provided examples of 'extraordinary and compelling reasons' that might warrant a reduction." *Shkambi*, 2020 WL 1291609, at *3. However, Foots has failed to persuade the Court that his circumstances rise to the level of extraordinary and compelling. Thus, in the Court's discretion, the Court **DENIES** Foots's motion **WITHOUT PREJUDICE**.

C.     *The Section 3553(a) Factors Weigh Against Release.*

Finally, even if Foots demonstrated extraordinary and compelling reasons warranting his

release, the Court must consider the sentencing factors set forth in § 3553(a) to the extent they are applicable. *See* § 3582(c)(1)(A). And the Court is not persuaded that these factors support Foots's request.

Section 3553(a) requires the Court to consider, among other things, whether a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense[.]" § 3553(a)(2)(A). Foots was convicted of interference with commerce by threats of violence in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and using/carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Doc. 78, Jury Verdict. Given the nature of Foots's crimes and the length of his sentence, the Court cannot conclude that compassionate release would promote the goals of § 3553(a).

In imposing Foots's sentence, the Court found that the public's "safety needs to be preserved from [Foots.]" Doc. 105-2, Tr. 16:15–16. Indeed, the Court noted that Foots committed "a highly planned, dangerous offense" and that "[n]umerous people's lives were put in jeopardy by [Foots's] activities[.]" *Id.* at 15:5–7. Accordingly, the Court found 350 months of imprisonment appropriate to serve the goals of § 3553(a). Doc. 94, J., 1–3. And with a statutory release date of January 3, 2033, a significant portion—137 months—of Foots's sentence remains to be served. In this case, compassionate release would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense[.]" § 3553(a)(2)(A); *see also Thompson*, 984 F.3d at 434 (noting that compassionate release is generally granted only "for defendants who had already served the lion's share of their sentences"). The § 3553(a) factors thus weigh against Foots's release. This is an independent justification for denying his motion.

IV.

CONCLUSION

Foots's request for compassionate release fails because he has not demonstrated extraordinary and compelling reasons for compassionate release, and the § 3553(a) factors weigh against his release. For those reasons, the Court **DENIES** Foots's motion (Doc. 177) **WITHOUT PREJUDICE**.

By denying Foots's motion without prejudice, the Court permits Foots to file a subsequent motion for compassionate release in the event he demonstrates a change in circumstances rising to the level of extraordinary and compelling, satisfies the exhaustion requirement with respect to those circumstances, and shows that the § 3553(a) factors support his release.

**SO ORDERED.**

**SIGNED: July 20, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE