UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:07-CR-0285-B-1 |
| | § | |
| FREDDY LEE FOOTS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Freddy Lee Foots (Foots)'s Motion for Compassionate Release (Doc. 192). For the reasons that follow, Foots's motion is **DENIED WITHOUT PREJUDICE**.

## I.

## BACKGROUND

On June 12, 2008, a jury found Foots guilty of one count of interference with commerce by threats of violence in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and one count of using/carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Doc. 78, Jury Verdict. On October 30, 2008, the Court sentenced Foots to 350 months of imprisonment and five years of supervised release. Doc. 94, J. 1–3. Foots is currently sixty-seven years old and is confined at Big Spring Federal Correctional Institute (FCI) with a statutory release date of February 13, 2033.[1] As of January 13, 2023, Big Spring FCI has no active cases and 587

---

[1] The Court derives this information from the Bureau of Prisons (BOP)'s Inmate locator, available at https://www.bop.gov/inmateloc/ (last accessed January 13, 2023).

- 1 -

recovered cases of COVID-19 among its inmates.[2]

Foots filed a Motion for Compassionate Release (Doc. 192) on September 26, 2022. He argues that his various medical conditions, the conditions at Big Spring FCI, and his family circumstances support granting him compassionate release.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (footnote omitted) (quoting § 3582(c)(1)(A)(i)).

## III.

## ANALYSIS

As explained below, Foots's request for compassionate release fails because he has not demonstrated extraordinary and compelling reasons for a sentence reduction and because the § 3553(a) factors weigh against his release.

A.   *Foots Exhausted His Administrative Remedies.*

Section 3582(c)(1)(A) allows a defendant to bring a motion for compassionate release "after

---

[2] The Court derives this information from the BOP's COVID-19 webpage, available at https://www.bop.gov/coronavirus/ (last accessed January 13, 2023).

the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." § 3582(c)(1)(A).

Here, the Court finds that Foots satisfied the exhaustion requirement. Foots attaches a copy of a letter from the warden of Big Spring FCI dated July 13, 2022, denying his request for compassionate release. Doc. 192, Mot. 6. This same letter states that Foots's request was received by BOP on June 30, 2022. *Id.* Thirty days have lapsed since Foots's request was received by the BOP, satisfying the second prong of the exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A). The Court now turns to the merits of Foots's motion.

B.  *Foots Has Not Shown Extraordinary and Compelling Reasons for Compassionate Release.*

Foots has not shown "extraordinary and compelling reasons" warranting compassionate release. *See* § 3582(c)(1)(A). Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. *See generally id.* Rather, Congress "delegated that authority to the Sentencing Commission" and directed it to "promulgate general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (citations, quotation marks, and alterations omitted).

Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement—U.S.S.G. § 1B1.13—that "sets forth three circumstances that are considered 'extraordinary and compelling reasons.'" *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A) & cmt. n.1). These include the defendant's medical

condition, age, and family situation. *See* § 1B1.13(1)(A) & cmt. n.1.[3] However, § 1B1.13 only applies to motions filed by "the Director of the [BOP]" and thus does not "bind[] a district court addressing a prisoner's own motion under § 3582." *Shkambi*, 993 F.3d at 393 (citing § 1B1.13).

While not binding, § 1B1.13 and its commentary nonetheless inform the Court's analysis of a prisoner's motion as to what constitutes an extraordinary and compelling reason for compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to . . . § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curium) (noting that U.S.S.G. § 1B1.13 is "not dispositive" but "guid[ing]"); *United States v. Contreras*, 2021 WL 1536504, at *4 (E.D. Tex. Apr. 19, 2021) (finding § 1B1.13 informative in evaluating a prisoner's motion in light of *Shkambi*'s holding). Considering Foots's motion in light of § 1B1.13 and applying the Court's discretion, the Court concludes that Foots has not demonstrated "extraordinary and compelling reasons" warranting compassionate release. *See* § 3582(c)(1)(A).

In his motion, Foots asserts that compassionate release is warranted because he "has been diagnosed with kidney disease, hepatitis (C), acid reflux, hypertension, and Covid 19 three . . . times." Doc. 192, Def.'s Mot. 2. Foots notes that COVID-19 can cause "serious health issues" and that "the incarcerated population ha[s] experienced disproportionately higher rates of Covid related illness and death compared with the general U.S. population." *Id.* at 2–3. Further, Foots asserts that prison conditions "ha[ve] failed to live up to the standards of human dignity and welfare of

---

[3] The policy statement also provides a catch-all provision for the existence of "an extraordinary and compelling reason other than, or in combination with," the three circumstances set forth above, "[a]s determined by the Director of the [BOP.]" § 1B1.13(1)(A) cmt. n.1.

mankind." *Id.* at 2. He explains that he "lack[s] . . . meaningful medical care," "the conditions are cruel and unsanitary," and prisoners are subject to various "abuse[s] of rights." *Id.* at 2–3. Finally, Foots states that, if granted compassionate relief, he will "[h]elp take care of [his] elderly mother who has been diagnosed with the early stage of dementia and Alzheimer's disease." *Id.* at 4.[4]

The Court notes that to the extent Foots raises concerns about the conditions at Big Spring FCI and the risk of exposure to COVID-19 in the prison, those concerns do not give rise to extraordinary and compelling reasons for his release. "[A]llegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007) (per curiam). The Court recognizes the unprecedented nature of COVID-19 and the outbreak of the virus at various federal prisons. But Big Spring's FCI's statistics—587 recovered cases and zero active cases of COVID-19—suggest the decline of an outbreak, if anything. Further, generalized concerns about the spread of COVID-19 at Foots's facility do not give rise to extraordinary and compelling reasons for release. Rather, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements" about, for example, the propriety of incarceration for all inmates at a given facility. *See United States v. Delgado*, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020).

Regarding Foots's individual circumstances, the Court finds that he has not demonstrated extraordinary and compelling circumstances warranting compassionate release. As discussed, the Court exercises its discretion to determine whether a prisoner's motion demonstrates extraordinary and compelling reasons for release, but is "guided in [its] analysis by the commentary" to § 1B1.13.

---

[4] Foots also argues that "Hobbs Act[] Robbery may not serve as basis for career offender classification under the Federal Sentencing Guidelines." Doc. 192, Mot. at 3. The Court does not address this argument because Foots was not sentenced as a career offender on either offense. *See* Doc. 94, J.

*Rivas*, 833 F. App'x at 558. And indeed, the commentary describes situations where compassionate release may be appropriate. For example, medical conditions of the defendant may warrant release where "[t]he defendant is suffering from a terminal illness" or "suffering from a serious . . . condition, . . . impairment, or . . . deteriorating physical or mental health because of the aging process." § 1B1.13(1)(A) cmt. n.1(A).

While not binding, this commentary is informative as to when circumstances rise to the level of extraordinary and compelling. The Court does not require the exact scenarios described in the commentary to § 1B1.13. However, the Court does require an "extraordinary and compelling" circumstance to involve a comparable degree of necessity and urgency. And Foots has not shown that his conditions involve necessity and urgency such that compassionate release is warranted.

Although Foots provides medical records substantiating many of his medical conditions, *see* Doc. 192, Mot. 7–18, he provides no argument or evidence as to the manageability of these conditions. *See generally id.* While the Court does not discount the severity of Foots's conditions or the unprecedented nature of COVID-19 and the outbreak of the virus in federal prisons across the country, the Court will not grant Foots compassionate release based purely off his diagnoses. "[T]he Court must consider every prisoner individually and should be cautious about making blanket pronouncements[.]" *Delgado*, 2020 WL 2542624, at *3. Such disfavored "blanket pronouncements" may concern the propriety of incarceration for all inmates with certain medical conditions. *See, e.g.*, *id.* (organ transplants); *United States v. Long*, 2021 WL 949757, at *2 (N.D. Tex. Mar. 12, 2021) ("chronic obstructive lung disease, asthma, obstructive sleep apnea, benign hypertension, allergic rhinitis, obesity, arthropathy, and hepatitis C"); *United States v. Isidaehomen*, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021) ("type II diabetes mellitus, hypertension, shortness of breath, thyroid

disorder, anemia, unspecified hemorrhoids, pain in unspecified joint, acute sinusitis, allergic rhinitis, hypermetropia, unspecified glaucoma, unspecified polyneuropathy, and anxiety") (alterations incorporated). As such, the Court declines to make a blanket proclamation that mere diagnoses of "kidney disease, hepatitis (C), acid reflux, hypertension," or COVID-19, or some combination thereof, justify granting compassionate release. Doc. 192, Mot. 2.

Instead, the Court looks to whether there are extraordinary and compelling circumstances specific to Foots. This inquiry involves considering not only Foots's diagnoses, but also the severity of his medical conditions and his ability to manage his health while incarcerated. *See Isidaehomen*, 2021 WL 243458, at *3. Foots provides little information regarding his specific circumstances beyond his diagnoses, and the Court does not independently find that his conditions are unmanageable or that they otherwise involve a degree of necessity and urgency such that compassionate release is warranted.

Foots's claim that he "lack[s] . . . meaningful medical care" is belied by the record. Doc. 192, Mot. 2. His medical records indicate that he receives frequent medical attention, can consult medical professionals, and has access to adequate care and medications when needed. *See id.* at 7–18 And there is no indication that Foots would receive better care for his conditions if released from Big Spring FCI. The Court therefore rejects Foots's allegations of inadequate medical care as a basis for compassionate release.

Foots's mother's "dementia and Alzheimer's disease" diagnoses also do not provide a basis for compassionate release. *Id.* at 4. Such a situation is undoubtedly difficult, but the commentary to § 1B1.13 contemplates situations where the caregiver for the defendant's minor child or children dies or is incapacitated or where the defendant is the only available caregiver for their spouse or partner.

§ 1B1.13(1)(A) cmt. n.1(C). Foots has not indicated that he is the only available caregiver for his mother; indeed, he states that he would "[h]elp" take of her if he was released. The Court therefore rejects Foots's family circumstances as a basis for compassionate release.

Overall, there is nothing before the Court indicating that Foots's personal circumstances warrant compassionate release. As discussed, "Congress never defined or provided examples of 'extraordinary and compelling reasons' that might warrant a reduction." *Shkambi*, 2020 WL 1291609, at *3. However, Foots has failed to persuade the Court that his circumstances rise to the level of extraordinary and compelling. Thus, in the Court's discretion, the Court **DENIES** Foots's motion **WITHOUT PREJUDICE**.

C.   *The Section 3553(a) Factors Weigh Against Release.*

Finally, even if Foots demonstrated extraordinary and compelling reasons warranting his release, the Court must consider the sentencing factors set forth in § 3553(a) to the extent they are applicable. *See* § 3582(c)(1)(A). The Court is not persuaded that these factors support Foots's request.

Section 3553(a) requires the Court to consider, among other things, whether a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense[.]" § 3553(a)(2)(A). Foots was convicted of interference with commerce by threats of violence in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and using/carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Doc. 78, Jury Verdict. Given the nature of Foots's crimes and the length of his sentence, the Court cannot conclude that compassionate release would promote the goals of § 3553(a).

In imposing Foots's sentence, the Court found that the public's "safety needs to be preserved

from [Foots.]" Doc. 105-2, Tr. 16:15–16. Indeed, the Court noted that Foots had committed "a highly planned, dangerous offense" and that "[n]umerous people's lives were put in jeopardy by [Foots's] activities[.]" *Id.* at 15:5–7. Accordingly, the Court found 350 months of imprisonment appropriate to serve the goals of § 3553(a). Doc. 94, J., 1–3. And with a statutory release date of February 13, 2033, a significant portion—121 months—of Foots's sentence remains to be served. In this case, compassionate release would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense[.]" § 3553(a)(2)(A); *see also Thompson*, 984 F.3d at 434 (noting that compassionate release is generally granted only "for defendants who had already served the lion's share of their sentences"). The § 3553(a) factors also weigh against Foots's release. This is an independent justification for denying his motion.

## IV.

## CONCLUSION

Foots's request for compassionate release fails because he has not demonstrated extraordinary and compelling reasons for compassionate release and the § 3553(a) factors weigh against his release. For those reasons, the Court **DENIES** Foots's Motion (Doc. 192) **WITHOUT PREJUDICE**.

By denying Foots's Motion without prejudice, the Court permits Foots to file a subsequent motion for compassionate release in the event he demonstrates a change in circumstances rising to the level of extraordinary and compelling, satisfies the exhaustion requirement with respect to those circumstances, and shows that the § 3553(a) factors support his release.

SO ORDERED.

SIGNED: January 13, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE